IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| WILLIAM WHITE, JR., <br> *pro se* Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br> Defendant. | ) <br> ) <br> ) <br> )    Civil Action No. 3:16cv774 (DJN) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

On August 15, 2012, William White, Jr. ("Plaintiff") protectively filed for Social Security Disability Benefits ("DIB") and for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from arthritis in both knees, diabetes, high blood pressure and gastroesophageal reflux disease ("GERD"), with an alleged onset date of January 1, 2012. (R. at 242-46.) The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff, now proceeding *pro se*, seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in assessing his residual functional capacity ("RFC"), in concluding that he could perform work existing in the national economy, and that additional evidence not previously submitted to the Agency warrants remand. (Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 13) at 1-2.) This matter now comes before the Court by consent of the parties pursuant to 28 U.S.C. §636(c)(1) on the parties' cross-motions for

summary judgment, rendering the matter ripe for review.[1] For the reasons that follow, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF No. 13), GRANTS Defendant's Motion for Summary Judgment (ECF No. 15) and AFFIRMS the final decision of the Commissioner.

I. PROCEDURAL HISTORY

On August 15, 2012, Plaintiff protectively filed an application for DIB and SSI with an alleged onset date of January 1, 2012. (R. at 207-21, 242.) The SSA denied these claims initially on January 29, 2013, and again upon reconsideration on November 7, 2013. (R. at 92-109, 112-32.) At Plaintiff's written request, the ALJ held a hearing on January 23, 2015. (R. at 25, 151.) On April 16, 2015, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because he could make successful adjustments to jobs that existed in significant numbers in the national economy. (R. at 9-19.) Specifically, Plaintiff could perform the duties of a production inspector and information clerk. (R. at 18.) On August 11, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-3.)

II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the [SSA]'s disability determination 'when an ALJ has applied correct legal standards and the ALJ's

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

2

factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F.App'x 264, 267 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite his physical and mental limitations. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On January 23, 2015, the ALJ held a hearing during which Plaintiff (then-represented by counsel) and a vocational expert ("VE") testified. (R. at 25-78.) On April 16, 2015, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 9-19.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 10-11.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date. (R. at 11.) At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis, degenerative joint disease ("DJD") of the right knee, history of open reduction internal fixation ("ORIF") of the right tibia with hardware replacement, hypertension, hyperlipidemia, diabetes

mellitus, and obesity. (R. at 11.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the listings. (R. at 12.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work with additional limitations. (R. at 13.) Plaintiff could only occasionally lift, carry, push and pull twenty pounds and ten pounds frequently. (R. at 13.) Plaintiff could stand and/or walk two hours in an eight-hour workday and sit six or more hours in an eight-hour workday. (R. at 13.) He could occasionally climb ramps or stairs, but could never climb ladders, ropes or scaffolds. (R. at 13.) Additionally, Plaintiff could only occasionally balance, stoop, kneel, crouch and crawl. (R. at 13.) He could not tolerate exposure to extreme heat or cold. (R. at 13.) Furthermore, he would need to alternate between sitting and standing every thirty minutes while remaining on task. (R. at 13.) Plaintiff required the use of a cane. (R. at 13.) Finally, Plaintiff could understand, remember and carry out simple and routine work-related instructions, along with concentrating for periods of two hours on work-related tasks before requiring a break. (R. at 13.)

At step four, the ALJ determined that Plaintiff could not perform any past relevant work. (R. at 17.) Finally, at step five, the ALJ concluded that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. at 18.) Specifically, Plaintiff could work as a production inspector and information clerk. (R. at 18.) Therefore, he did not qualify as disabled. (R. at 19.)

IV. ANALYSIS

Plaintiff, fifty years old at the time of this Opinion, previously worked as a warehouse supervisor and a flagman. (R. at 17, 242, 247.) He applied for Social Security benefits, alleging

disability from arthritis, diabetes, high blood pressure and GERD, with an alleged onset date of January 1, 2012. (R. at 242, 246.) Plaintiff's appeal to this Court alleges that the ALJ erred in assessing his RFC and in finding that he could perform work that existed in the national economy. (Pl.'s Mem. at 1.) Additionally, Plaintiff claims that updated records that he submitted to the Court prove his disability. (Pl.'s Mem. at 1-2.) Defendant responds that substantial evidence supports the ALJ's decision. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") (ECF No. 15) at 12.) For the reasons that follow, the ALJ did not err in his decision.

### A. The ALJ Did Not Err in Assessing Plaintiff's RFC.

Plaintiff argues that the ALJ erred in assessing his RFC. (Pl.'s Mem. at 1.) Specifically, Plaintiff argues that his knee pain limits him more than the RFC reflects. (Pl.'s Mem. at 1.) Defendant responds that the ALJ properly assessed Plaintiff's RFC. (Def.'s Mem. at 12.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.945(a)(1), 416.920(a)(4)(iv), 416.945(a)(1). In analyzing a claimant's disabilities, the ALJ must first assess the nature and extent of a claimant's limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. §§ 404.1545(b), 416.945(b). Generally, the claimant shoulders the responsibility for providing the evidence that the ALJ utilizes in making his RFC determination; however, before determining that a claimant does not have a disability, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. §§ 404.1545(a)(3), 416.945(a)(3). The RFC must incorporate impairments that find a basis in

the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. §§ 404.1545(e), 416.945(e).

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996), at *5). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p, at *7).

Here, the ALJ considered the x-rays of Plaintiff's knees taken in 2012 and 2013 and discussed their results. (R. at 14.) He discussed Plaintiff's 2009 hospitalization, as well as the results from physical examinations conducted between 2012 and 2014. (R. at 14-15.) The ALJ detailed both the positive and negative findings from these exams. (R. at 14-15.) Additionally, the ALJ noted the routine and conservative nature of treatment for Plaintiff's impairments. (R. at 15.) In reviewing Plaintiff's daily activities, the ALJ determined that Plaintiff could function at a greater level than he alleged. (R. at 16.)

The ALJ also considered the opinions of the state agency consultants. (R. at 16.) He gave the opinions slight weight, because the evidence showed further limitations than what they had opined. (R. at 16.) Additionally, he gave the opinion of the consultative medical examiner partial weight, but imposed additional limitations. (R. at 17.) The ALJ relied on Plaintiff's daily activities, the objective medical findings and the routine nature of his medical care in assessing his RFC. (R. at 15-17.) Substantial evidence supports the ALJ's decision.

### 1. Plaintiff's medical records support the ALJ's findings.

On May 7 2009, the McGuire VA Medical Center ("VAMC") admitted Plaintiff. (R. at 297.) Monica Hazelrigg, M.D., diagnosed Plaintiff with new onset diabetes mellitus and diabetic ketoacidosis. (R. at 297, 302, 304.) An insulin drip and electrolyte repletions resolved Plaintiff's diabetic ketoacidosis. (R. at 302.) Dr. Hazelrigg prescribed a regimen of lisinopril and amlodipine to control Plaintiff's blood pressure. (R. at 302-03.) Upon physical examination, Plaintiff appeared mildly distressed, reporting sporadic chest tightness, as well as sporadic loss of strength or feeling in his left hand. (R. at 299.) But Plaintiff also displayed 5/5 grip strength in both hands and 5/5 strength bilaterally in his upper and lower extremities. (R. at 299.) The VAMC discharged Plaintiff on May 11, 2009. (R. at 297.)

On February 13, 2011, Plaintiff presented to the VAMC pharmacotherapy clinic to manage his diabetes. (R. at 317.) Plaintiff denied experiencing myalgia and generally had no complaints. (R. at 317.) Plaintiff reported to Brandi L. Cummings, PharmD, BCPS, that he walked three to four times per day for exercise. (R. at 317, 320.)

On April 6, 2011, Plaintiff visited the VAMC for a blood pressure check and to receive instructions on how to self-check, monitor and record his blood pressure at home. (R. at 315-16.) Plaintiff reported to Mary P. Clay, R.N., that he cut meal portions in an attempt to lose weight and walked at least one mile three times per week for exercise. (R. at 316.)

On January 17, 2012, Plaintiff presented to the VAMC with knee pain. (R. at 307.) Juliette Fontaine, M.D., ordered x-rays and referred Plaintiff to physical therapy. (R. at 309-10, 335.) The x-rays showed status post ORIF of proximal right tibia fracture with no evidence of acute fracture or dislocation. (R. at 335.) His right knee had tricompartmental degenerative changes. (R. at 335.) However, Plaintiff's knees appeared well-aligned and had not changed

significantly since 2009. (R. at 335.) His right knee lacked any joint effusion, and his left knee exhibited mild chronic degenerative changes. (R. at 335.) Regarding Plaintiff's obesity, Dr. Fontaine advised Plaintiff to work on his diet, exercise and weight loss. (R. at 309.)

On February 16, 2012, Plaintiff presented to the VAMC for a follow-up regarding his knee pain. (R. at 305-06.) On exam, Plaintiff had limited knee flexion and extension of his left knee with limited flexion in his right knee. (R. at 305.) He had no patellar motion restrictions. (R. at 305.) Additionally, he had no varus or vargus instability. (R. at 305.) Jeffrey Spears, MSPT, instructed Plaintiff to use ice, a cane, neoprene and exercises to treat his knee pain. (R. at 306.) Plaintiff did not show up for his follow-up physical therapy appointment on March 2, 2012. (R. at 306.)

On January 3, 2013, Plaintiff had additional x-rays taken at Retreat Doctors' Hospital. (R. at 338.) His left knee exhibited intact bony structures without any fracture, body lesion or significant arthritic change. (R. at 338.) The right knee showed postsurgical change and moderate arthritic change. (R. at 339.)

On January 8, 2013, Plaintiff underwent a consultative exam with Nancy Powell, M.D. (R. at 341.) Plaintiff executed a heel-to-knee maneuver one-third of the way with his right heel and one-half of the way with his left. (R. at 343.) He had a negative Romberg and straight leg raise. (R. at 343.) Plaintiff exhibited 110 degrees flexion bilaterally. (R. at 343.) Dr. Powell found no tenderness or edema. (R. at 343.) Dr. Powell observed that Plaintiff walked from the waiting room to the examining room with a cane, and he had a slight limp. (R. at 342.) Plaintiff had no difficulty getting on and off the exam table. (R. at 343.)

On June 4, 2013, the VAMC admitted Plaintiff for pneumonia. (R. at 352.) William Gillen, M.D., and Tangada Prema Sudha Rao, M.D., oversaw Plaintiff's treatment during his

hospitalization. (R. at 361.) The VAMC discharged Plaintiff in stable condition on June 7, 2013. (R. at 352-53.) Plaintiff displayed a normal gait and left the hospital ambulatory. (R. at 359, 373). Dr. Gillen and Dr. Rao authorized Plaintiff to resume regular duties of employment immediately upon discharge. (R. at 361.) Neither physician noted additional restrictions, nor limited Plaintiff to "light duty work." (R. at 361.)

On November 4, 2013, Plaintiff underwent x-rays of both knees. (R. at 424.) They showed status post ORIF proximal right tibia fracture with no acute fracture or dislocation. (R. at 425.) The right knee showed post-traumatic degenerative changes, grossly unchanged. (R. at 425.) The left knee showed mild chronic degenerative changes. (R. at 425.) Rachna Dhar, M.D., wrote to Plaintiff with the x-ray results. (R. at 428.) Dr. Dhar's letter did not suggest a course of treatment. (R. at 428.)

On January 7, 2014, Plaintiff presented to the VAMC for an orthopedic consultation with complaints of knee pain. (R. at 507-08.) Plaintiff did not appear in any apparent distress. (R. at 508.) John McMurtry, M.D., found Plaintiff with intact flexion-extension at the hip, ankle and knee. (R. at 508, 510.) Plaintiff appeared stable to varus, valgus, anterior and posterior drawer. (R. at 508.) Plaintiff had negative Lachman and McMurray tests. (R. at 508-09.) He had intact and normal reflexes. (R. at 509.) However, Plaintiff had tenderness to palpation over the medial and lateral knee joint lines. (R. at 509.) He demonstrated positive patellar crepitus. (R. at 509.) As for treatment, Dr. McMurtry advised Plaintiff to avoid high-impact activities, utilize knee braces, and take nonsteroidal pain medications as medically appropriate. (R. at 509.) They discussed that Plaintiff may need knee replacements eventually. (R. at 509.) Ultimately, they decided to continue to treat Plaintiff's knee pain with nonsteroidal pain medications, as he did not want to pursue surgery. (R. at 509-10.)

On December 18, 2014, Plaintiff visited the VAMC for a routine check-up. (R. at 482-83.) Dr. Dhar noted Plaintiff's well-controlled blood pressure, that Plaintiff had orthopedic consultation regarding his knees and that he had made efforts to be compliant with diet and exercise. (R. at 483, 487.) Physical examination showed that Plaintiff walked with the help of a cane, but his knees were non-tender with no swelling or erythema. (R. at 486.) Plaintiff displayed a normal mood and affect. (R. at 486.) Dr. Dhar described Plaintiff's diabetes as uncontrolled and advised him to comply with his insulin, exercise and diet regimen. (R. at 486.) Plaintiff stated that he walked every day. (R. at 486.) Dr. Dhar noted no other concerns during this visit. (R. at 483.)

Michelle G. Smith, LPN, also completed a fall risk assessment with Plaintiff on December 18, 2014. (R. at 488.) Plaintiff denied ever falling in the past year and denied worrying that he might fall. (R. at 488.) Nurse Smith observed that Plaintiff's stride and mobility appeared essentially normal. (R. at 488.)

On June 13, 2014, Plaintiff returned to Dr. Dhar at the VAMC for another routine check-up. (R. at 495.) Dr. Dhar again noted Plaintiff's well-controlled blood pressure, but described his diabetes as uncontrolled. (R. at 496.) Dr. Dhar advised Plaintiff to avoid sugary drinks to better control his blood sugar, as well as to comply with his insulin, diet and exercise regimen. (R. at 496, 498-500.) Plaintiff displayed a normal mood and affect and appeared alert. (R. at 498.) Physical examination revealed no tenderness, swelling or erythema in Plaintiff's knees. (R. at 498.) Plaintiff reported that he walked every day. (R. at 499.) Nurse Smith also completed a diabetes foot exam at this visit. (R. at 504.) The results showed that Plaintiff had normal sensation and circulation and no deformity. (R. at 504.) Dr. Dhar noted no other concerns during this visit. (R. at 496.)

Plaintiff's physical exams show both positive and negative findings regarding his knee pain. At times, he exhibited a decreased range of motion and strength in his knee with pain and inflammation, positive patellar crepitus, lower extremity edema and a slight limp. (R. at 305-06, 342-44, 389, 411, 509.) Other times, however, he demonstrated stable varus, valgus, anterior and posterior drawer, normal motor strength, no edema, negative Lachman and McMurray tests, normal sensations and intact reflexes. (R. at 305-06, 343, 373, 508-09.) The ALJ considered these findings and imparted limitations on Plaintiff based on them.

### 2. Dr. Powell's opinion, Plaintiff's daily activities and Plaintiff's previous work support the ALJ's findings.

First, Dr. Powell's opinion supports the ALJ's determination. She opined that Plaintiff could stand or walk for six hours in an eight-hour work day with more frequent breaks. (R. at 344.) He could sit without restriction. (R. at 344.) He could lift or carry twenty-five pounds occasionally and fifteen pounds frequently with the hand that he did not use to hold his cane. (R. at 344.) He would have possible postural limitations with climbing, kneeling and crawling due to his knee pain. (R. at 344.) The ALJ gave this opinion partial weight and incorporated the exertional limitations. (R. at 17.) However, he assessed additional non-exertional limitations. (R. at 17.)

Second, Plaintiff's daily activities support the ALJ's decision. On October 22, 2012, Plaintiff completed a function report. (R. at 252-259.) Plaintiff reported that he cooked complete meals and went to the store. (R. at 252, 254.) He reported no problems with his personal care. (R. at 253-54.) He washed dishes, did laundry, ironed and made his bed. (R. at 254.) Plaintiff went outside almost daily and could go do so alone. (R. at 255.) He used public transportation but did not drive, because he had no car. (R. at 255.) Plaintiff would walk to his

neighbor's house. (R. at 256.) He reported that he could walk a half-mile before needing to rest for five or ten minutes. (R. at 257.)

Finally, Plaintiff's previous work supports the ALJ's decision. Even if a claimant's work does not rise to the level of gainful employment, it can indicate some capacity to work. 20 C.F.R. §§ 404.1571, 416.971. Here, Plaintiff's wage statements indicate that he worked at various times between 2012 and 2014. (R. at 223-25, 231-33, 235.) Additionally, he received unemployment compensation in 2012 and 2013, which required him to certify that he had the willingness and capacity to work. (R. at 16, 214.)

Substantial evidence supports the ALJ's determination as to Plaintiff's limitations. Plaintiff's medical records show mixed findings. The ALJ relied on the positive findings, Plaintiff's daily activities and his work history to resolve the conflicting findings. This Court will not second guess the ALJ's resolution of those conflicts, because substantial evidence in the record supports his findings.

### B. The ALJ Did Not Err at Step Five.

Plaintiff next argues that the ALJ erred at step five of the sequential analysis by determining that he could perform work that existed in the national economy. (Pl.'s Mem. at 1.) Defendant responds that the ALJ properly relied on the testimony of the VE at step five. (Def.'s Mem. at 13-14.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, he can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f). The Commissioner can carry her burden at the final step with the testimony of a VE. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). During the VE's testimony, the ALJ must pose

hypothetical questions that accurately represent the claimant's RFC based on all of the record evidence and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform.[2] *Id.* Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.*; *Hines v. Barnhart*, 453 F.3d 559, 567 (4th Cir. 2006)(finding that the VE's testimony had no value, because he did not take all of the claimant's impairments into account).

Here, the ALJ posed a hypothetical that mirrored the above discussed RFC. (R. at 72-75.) The VE testified that, based on his experience, a hypothetical person with Plaintiff's age, education, work experience and RFC could work as a production inspector (DOT No. 529.666-014), with 41,300 jobs available nationally, and an information clerk (DOT 205.367-014), with 38,500 jobs available nationally. (R. at 74-75.) Based on the testimony of the VE, the ALJ determined at step five that Plaintiff did not qualify as disabled. (R. at 18.)

The ALJ made a proper step five finding, because he relied on relevant testimony from the VE in response to an appropriate hypothetical. Because the hypothetical posed to the VE took into account all of the Plaintiff's physical and mental limitations described in the RFC, and substantial evidence supports the RFC determination, the ALJ did not err.

### C. New Evidence Submitted to the Court Does Not Warrant Remand.

Plaintiff alleges that the evidence he has submitted for the first time with his appeal to this Court shows a deterioration of his condition and warrants remand. (Pl.'s Mem. at 2.)

---

[2] The ALJ relies primarily on the Dictionary of Occupational Titles ("DOT") to decide whether sufficient work exists for the plaintiff in the national economy. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015); SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). However, the ALJ may also consult a VE "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice . . . ." *Pearson*, 810 F.3d at 207.

Defendant contends that this does not constitute proper grounds for remand. (Def. Mem. at 13 n.2.) Here, the additional evidence does not support Plaintiff's request for remand.

A court may remand on the basis of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The evidence must meet four requirements: (1) the new evidence must relate to the period before the ALJ's decision; (2) the new evidence has a material effect on the outcome; (3) there exists good cause for the claimant's failure to submit the new evidence before the ALJ; and (4) the plaintiff must make a general showing of the evidence. *Borders v. Heckler*, 777 F.2d 954, 954-55 (4th Cir. 1985), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991); *Brown v. Comm'r of Soc. Sec.*, 2010 WL 2787898, at *7 n.5 (E.D. Va. June 21, 2010) (noting that the Fourth Circuit continues to cite *Borders* as the standard for new evidence); *Washington v. Comm'r of Soc. Sec.*, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009) (applying the *Borders* four-part test to new evidence). When a plaintiff alleges that new evidence indicates a worsening of his alleged symptoms after the ALJ's decision, he may file a new application for benefits. 20 C.F.R. §§ 404.620(a)(2), 416.330(b) (providing that if an applicant meets the requirements for disability after the period in which his application was in effect, he must file a new application).

Here, Plaintiff argues that the updated records show that his knee conditions have worsened. (Pl.'s Mem. at 1-2.) Specifically, Plaintiff submitted records from June 28, 2016 through December 2, 2016. (Pl.'s Med. Ex. (filed with ECF No. 13).) On June 28, July 25 and August 2, 2016, Plaintiff presented to the VAMC with knee pain. (Pl.'s Med. Ex. at 19, 75, 81.) On August 31, 2016, Marcus Smith, M.D., reviewed x-rays of Plaintiff's knee taken on June 28,

2016, performed a steroid injection on Plaintiff's right knee and removed fluid from the knee. (Pl.'s Med. Ex. at 37-43, 64-72.) Dr. Smith reported that Plaintiff tolerated the procedure well. (Pl.'s Med. Ex. at 42.) Plaintiff received steroid injections in his left knee on September 16, 2016. (Pl.'s Med. Ex. at 55-60.) On October 21, 2016, Plaintiff received a synvisc injection in the left knee. (Pl.'s Med. Ex. at 49, 52.) Plaintiff reported that the synvisc injection improved his pain more than the steroid injections. (Pl.'s Med. Ex. at 49-54.)

These records do not relate back to the relevant time period before April 16, 2015 — the day of the ALJ's decision. Instead, they document Plaintiff's condition in 2016. As such, the new evidence does not warrant remand. If Plaintiff believes that these 2016 records require a finding of disability, then the appropriate course of action for Plaintiff is to file a new application for benefits. 20 C.F.R. §§ 404.620(a)(2), 416.330(b).

V. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Opinion to all counsel of record, and to *pro se* Plaintiff at his address of record.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: September 19, 2017